United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANA ALYCIA LACY-CURRY,

      Plaintiff.

  v.

ALAMEDA COUNTY SOCIAL SERVICES AGENCY, et al.,

      Defendants.

No. C 05-0453 SBA

**ORDER**

---

This matter comes before the Court on Plaintiff's First Amended Complaint, which was filed on September 7, 2005. Pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2), the Court has determined that this action fails to state a claim upon which relief can be granted and improperly seeks monetary relief against defendants who are immune from such relief. Accordingly, Plaintiff's First Amended Complaint is DISMISSED WITH PREJUDICE.

## **BACKGROUND**

During late 2002 or January 2003, Reed Seiden ("Seiden"), a social worker employed by the County of Alameda Social Services Agency ("Alameda Social Services Agency"), went to Plaintiff Jana Alycia Lacy-Curry's ("Plaintiff") home for a scheduled visit. First Amended Compl. ("AC") at ¶ 3. However, when Seiden saw two African American men near Plaintiff's house, he turned away and thus did not keep his appointment with Plaintiff. *Id.* Plaintiff reported Seiden's refusal to visit her home to Seiden's supervisor. *Id.*

Seiden subsequently contacted the Oakland Police Department and informed the police that Plaintiff was suffering from mental health issues, had no electricity in her home, and was unable to care for her children. *Id.* at ¶ 4. On February 10, 2003, Seiden also told the Alameda Social Services Agency that, although he did not know whether Plaintiff ever took the medications of Wellbutrin, Trazidone, and Zyprexa, Plaintiff "needed

1 to comply with her medication regime in order to stabilize her situation." *Id.*

2 Due to Seiden's report, Lawanda Martin ("Martin"), another social worker employed by the Alameda Social Services Agency, visited Plaintiff at her home. *Id.* at ¶ 5. Martin observed that Plaintiff had poor hygeine, that the refrigerator was not working, and that Plaintiff's front window was broken and was hanging outside of the house. *Id.* Plaintiff told Martin that she had attempted suicide "once a long time ago," but that she was not suicidal and that she did not need to take medication. *Id.* Plaintiff also told Martin that "people think [she] is crazy because [she] talk[s] about the ghost in [her] home and how ghosts are messing with [her]." *Id.* Martin helped Plaintiff secure a new residence. *Id.* Plaintiff made arrangements for her children to stay with friends until she could relocate to the new residence. *Id.*

On February 6, 2003, Plaintiff moved into her new residence. *Id.* at ¶ 5. On February 7, 2003, Plaintiff's children were scheduled to return to her home. *Id.* In a meeting that took place between Martin and Plaintiff on that day, however, Plaintiff told Martin that she had seen the television coming on by itself after she had unplugged it from the outlet and that her son, Kevin Williams ("Williams"), had observed the same strange occurrence. *Id.* Plaintiff's children were not returned to her and, instead, Martin took the children into protective custody. *Id.* When Martin filed her report with the Alameda Social Services Agency, she did not note in her report that Williams had observed the television turning on by itself. *Id.* Martin also failed to note that Plaintiff had told her that February 7, 2003 was the anniversary of Plaintiff's mother's death and that Plaintiff was grieving. *Id.* Instead, Martin reported to the Alameda Social Services Agency that Plaintiff "wanted her children to go to a foster home" and that Plaintiff's children "faced imminent danger and could not be protected from this danger in the home without removal." *Id.* Martin further reported that "assisting the mother in procurement of appropriate housing did not alleviate the situation." *Id.*

Subsequently, the Alameda Social Services Agency petitioned to have Williams permanently removed from Plaintiff's custody and to have a legal guardian appointed. *Id.* at ¶ 8. Consequently, since 2003, Plaintiff has been engaged in various state court proceedings relating to the custody and guardianship of her children. *Id.* at ¶¶ 7-8. Throughout the proceedings, the Alameda Social Services Agency has challenged Plaintiff's use of marijuana for medicinal purposes, the cleanliness of Plaintiff's home, Plaintiff's failure to take anti-psychotic medication, and Plaintiff's inability to properly parent her children. *Id.* at ¶ 7. On April 5, 2003, the court-

ordered psychiatrist recommended that Plaintiff's children be returned to her. *Id.* at ¶ 6. The psychiatrist also stated that "seeing ghosts is normal and not regarded as a symptom of psychosis" and that Plaintiff had "no psychotic symptoms that [would] render [her] parenting inadequate." *Id.* In 2004, the psychiatrist also stated that there was no need for Plaintiff to take anti-psychotic medication. *Id.* A psychological evaluation with a second expert revealed that Plaintiff was "depressed" but not psychotic. *Id.* Nevertheless, Plaintiff has not prevailed at any of the hearings, and legal guardians have been appointed for both children. *Id.* at ¶ 8. Plaintiff is currently pursuing her visitation rights in state court.

On January 31, 2005, Plaintiff filed a complaint against defendants Alameda Social Services Agency, Alameda County Superior Court, Martin, the City of Oakland, and Seiden. Also on that date, Plaintiff filed an application to proceed *in forma pauperis* ("IFP Application"). The case was initially assigned to Magistrate Judge Chen. On May 11, 2005, Magistrate Judge Chen granted Plaintiff's IFP Application.

On June 21, 2005, Plaintiff voluntarily dismissed defendant City of Oakland. Subsequently, on July 14, 2005, the case was reassigned to this Court.

On September 7, 2005, Plaintiff filed the instant First Amended Complaint. The First Amended Complaint asserts the following causes of action against the Alameda Social Services Agency, the Alameda Superior Court, Martin, and Seiden: (1) violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983, (2) disability discrimination under the Americans with Disabilities Act, and (3) violations of the California constitution pursuant to the California Unruh Act.

## **LEGAL STANDARD**

28 U.S.C. § 1915 allows commencement of a civil action "without payment of fees or security thereof, by a person who submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). The benefit of proceeding *in forma pauperis* is a privilege, not a right. *Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir. 1984). Consequently, the statute also authorizes the Court to dismiss a claim filed *in forma pauperis* "at any time" if the Court determines that: (1) the allegation of poverty is untrue; (2) the action is frivolous or malicious; (3) the action fails to state a claim; or (4) the action seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

## **ANALYSIS**

Having reviewed the First Amended Complaint, the Court has determined that Plaintiff has not stated, and cannot state, a viable claim for relief. Specifically, Plaintiff's claims are clearly barred by the *Rooker-Feldman* and *Younger* abstention doctrines. Additionally, all of the named defendants are immune from the causes of action alleged in the First Amended Complaint.

The *Rooker-Feldman* doctrine provides that a federal district court may exercise only original jurisdiction and thus may not exercise appellate jurisdiction over state court decisions. *See Dubinka v. Judges of the Superior Court of California*, 23 F.3d 218, 221 (9th Cir. 1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)); *see also* 28 U.S.C. § 1257(a). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001); *see also Board of Trustees of Leland Stanford Junior University v. Modual A/C Systems, Inc.*, 54 F.Supp.2d 965, 969 (N.D. Cal. 1999) (noting that *Rooker-Feldman* doctrine derived from both federalism and comity) (citing *Howlett v. Rose*, 496 U.S. 356, 372-73 (1990), *Martin v. Wilks*, 490 U.S. 755, 783 (1989)).

The doctrine applies even if the state court decision involves a resolution of federal law. *See Feldman*, 460 U.S. at 484-86, 103 S.Ct. 1303 (no jurisdiction even when challenge to constitutional guarantees to due process and equal protection) (citations omitted); *McNair*, 805 F.2d at 891. This is because state courts are considered as competent as the federal courts to decide issues of federal law. *See McNair*, 805 F.2d at 891 (citing *Allen v. McCurry*, 449 U.S. 90, 105 (1980), *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975)). The *Rooker-Feldman* doctrine also applies to decisions by both the state's highest court as well as lower state courts. *See McNair*, 805 F.2d at 893 n.3 ("We agree with the Second and Fifth Circuits that the Feldman doctrine should apply to state judgments even though state court appeals are not final."). Additionally, since federal review of an interlocutory decision would be a collateral federal attack on a state court decision, the *Rooker-Feldman* doctrine applies to interlocutory decisions by state courts as well as final decisions. *Napolitano*, 252 F.3d at 1029 (citations omitted).

Further, *Younger v. Harris*, 401 U.S. 37, 55 (1971) "and its progeny generally direct federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *Hirsch v. Justices of the Supreme Court of the State of California*, 67 F.3d 708, 712 (9th Cir. 1995) (citations omitted). In the Ninth Circuit, *Younger* abstention is appropriate if "(1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Gartrell Constr., Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Here, since Plaintiff is challenging past decisions made by the Alameda Superior Court relating to her child dependency proceedings, it is clear that Plaintiff's Amended Complaint falls squarely within the *Rooker-Feldman* doctrine. *See e.g., Branson v. Nott*, 62 F.3d 287, 291-92 (9th Cir. 1995) (no subject matter jurisdiction where plaintiff implicitly and explicitly sought reversal of California Court of Appeal decision through injunction against appellate judge). Further, since Plaintiff has also admitted that certain state court proceedings relating to her visitation rights are currently pending, the *Younger* abstention doctrine also supports dismissal of her action.

Additionally, Plaintiff's claims against the Alameda Superior Court are barred by the Eleventh Amendment, *see Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987), and the Alameda Social Services Agency, Seiden, and Martin enjoy absolute immunity from claims arising out of child dependency proceedings, *see Meyers v. Contra Costa County Department of Social Services*, 812 F.2d 1154, 1157 (9th Cir. 1987) ("We therefore hold that social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings."). Further, Seiden is also entitled to absolute immunity for reporting suspected child abuse or neglect to the Oakland Police Department. *See* Cal. Penal Code §§ 11165.7, 11172.

Accordingly, since all of Plaintiff's claims are barred, the Court concludes that, pursuant to 28 U.S.C. § 1915(e)(2), Plaintiff's First Amended Complaint should be DISMISSED WITH PREJUDICE.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Plaintiff's First Amended Complaint is DISMISSED WITH

PREJUDICE. The Clerk is directed to close the file and to terminate any pending matters.

IT IS SO ORDERED.

Dated: 12/7/05

SAUNDRA BROWN ARMSTRONG
United States District Judge